Dear Mr. King:
On behalf of 302 municipalities, you have requested the opinion of this office regarding an Equipment Installment Purchase Agreement Program marketed by First National Bank of Commerce and endorsed by the Louisiana Municipal Association's Executive Board. This office has been provided with a copy of a sample Equipment Installment Purchase Agreement in the form of a draft dated September 6, 1995 and asked to review the legality of same, specifically with regard to the necessity of State Bond Commission approval.
As you are no doubt aware, the State Bond Commission's approval is required prior to the incurrence of debt on the part of municipalities and other political subdivisions of the state. La. Const. Art. VII, Sec. 8; La. R.S. 39:1410.60. Such approval is only required upon the incurrence of debt, however, and this office has continually held that a debt is not created if the contract contains "non-funding out" or "non-appropriation" provisions. See Atty. Gen Ops. 92-559, 83-1045 and 81-701, enclosed herewith.
An agreement containing "non-funding out" or "non-appropriation" provisions would provide that if the municipality's governing authority failed, for anyreason, to make funds available or to have adequate funds available to make the necessary installment payments, then the agreement would be terminated without penalty. Essentially, such an agreement would provide that the installment purchase is funded on a strictly year-to-year basis based solely on current revenues, thus creating no debt. Atty. Gen. Op. 81-701.
Based upon the foregoing, it is the opinion of the office that the Agreement creates debt and requires State Bond Commission approval.
Essentially, the Agreement requires a participating municipality to do all it can to "appropriate" funds beyond an agreement to include necessary amounts in budget proposals. For example, Section 5 of the Agreement requires "Purchaser" to agree that its "primary business official" will do all things in its `power' and use `best efforts' "to obtain and maintain funds" for making payments. Additionally "Purchaser" is required to make "a diligent and good faith effort . . . to appropriate or
obtain funds". [See also Section 20(m)]. In our opinion, such language creates an obligation upon the municipality to fund the installments or to make efforts to fund the installments beyond including same in budget proposals. Such obligations are inconsistent with "non-appropriation" provisions which provide that the governing authority can fail to make funds available `for any reason', and thus, the Agreement creates debt.
We note that the Agreement contains language indicating that funds for making Installment and other payments should come from sources other than appropriations. Any language suggesting that a municipality would have a duty to use monies other than appropriated funds to make payments should be deleted. Similarly, the use of the term "Legally Available Funds" is somewhat misleading. Although the term is defined to mean appropriated funds, the Agreement would be much clearer if the term was substituted with "Legally Appropriated Funds".
We are also compelled to point out that Sections 5 and 22 of the Agreement contains a possible penalty for failure of the municipality to appropriate funds sufficient to make required payments. The Agreement provides that in addition to returning Equipment, the Bank can retain all Installment Payments previously paid as "stipulated compensatory amount". These provisions bear a striking resemblance to stipulated damage provisions found in innumerable contracts. Furthermore, to the extent that a municipality may have previously made payments that exceed the value of its use of the Equipment prior to returning the Equipment, then a penalty has surely occurred for failure to appropriate funds for the continued use of the Equipment. In addition, the Agreement provides that if the Equipment is returned to the Bank in a damaged condition, the municipality has to pay the costs of repairing the Equipment. We would suggest that city attorneys negotiate with the Bank to exclude some of the provisions which could be deemed to be over-reaching on the part of the Bank.
We also note that Section 24 of the Agreement allows an assignment by the Bank of its interest for the issuance of certificates of participation with respect to the Installment Payments payable under the Agreement. Please note that R.S.39:1405(B) provides:
 No person or entity, public or private, shall incur debt or issue evidences of indebtedness for the purpose of financing any project in the state of Louisiana, the interest upon which indebtedness or evidence thereof is exempt from federal income taxation under Section 103 of the Internal Revenue Code of 1954, without the consent and approval of the State Bond Commission. Any evidence of indebtedness incurred or issued in violation of this Section shall be null and void and no court of this state shall have jurisdiction to enforce the payment thereof pursuant to the provisions of R.S. 47:1806.
We would suggest that those municipalities which desire to utilize the Agreement, obtain an opinion of bond counsel as to whether R.S. 39:1405(B) applies to the Agreement.
We trust the foregoing to be of assistance.
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: JEANNE-MARIE ZERINGUE BARHAM Assistant Attorney General
RPI:JMZB:jv p:jmzb\ops95-508 cc: State Bond Commission